**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Kimberly Farr, individually as parent
and natural guardian of M.R., a minor,

        Plaintiff,                             **MEMORANDUM OPINION**
                                                        **AND ORDER**
        v.                                                       Civil No. 14-384 ADM/JSM

Burlington Northern Santa Fe Railways,
Rick D. Sutherland, Jim B. Lanier, Michael
Leonard, and Allison Terrell,

        Defendants.

---

Michael A. Bryant, Esq., Bradshaw & Bryant, PLLC, Waite Park, MN, on behalf of Plaintiff.

Timothy R. Thornton, Esq., Jonathan P. Schmidt, Esq., and Matthew R. Brodin, Esq., Briggs and Morgan, PA, Minneapolis, MN, on behalf of Defendants.

---

## I. INTRODUCTION

On May 19, 2014, the undersigned United States District Judge heard oral argument on Plaintiff Kimberly Farr's ("Farr") Motion to Remand to State Court [Docket No. 9]. Defendants Burlington Northern Santa Fe Railways ("BNSF"),[1] Rick D. Sutherland, Jim B. Lanier, Michael Leonard, and Allison Terrell (together, "Defendants") oppose the motion. For the reasons set forth below, Plaintiff's motion is denied.

## II. BACKGROUND

The underlying action concerns severe injuries suffered by Plaintiff Farr's son, M.R., when M.R. was injured by a train operating on train tracks owned and maintained by Defendant BNSF. Farr and M.R. are Minnesota residents. See Not. of Removal [Docket No. 1] Ex. A

---

[1] BNSF has stated that its proper name is "BNSF Railway Company." For the purposes of this Order, the Defendant Railroad will be referred to as "BNSF."

("Compl.") ¶¶ 3-4.  Farr alleges BNSF has its principal place of business in St. Paul, Minnesota. Id. ¶ 19.  Farr also alleges that Defendants Sutherland, Lanier, Leonard, and Terrell are or were employees of BNSF and currently reside in Minnesota.  Id. ¶¶ 8-11.  Farr alleges five claims against Defendants: (1) negligence per se, (2) failure to maintain safe premises, (3) failure to cooperate with the community, (4) negligence, and (5) intentionally disregarding public safety. Id. ¶¶ 23-44.

On January 22, 2014, Farr served but did not file the Complaint in this action on BNSF. On February 12, 2014, BNSF removed the action to federal court.  Not. of Removal at 1.  BNSF maintains that Farr fraudulently joined the four individual defendants in an attempt to destroy diversity jurisdiction.  On February 28, 2014, Farr moved to remand the action to state court.

### III.  DISCUSSION

**A.  Motion to Remand Standard**

In considering a motion to remand, "[t]he allegations of the complaint as set forth at the time the petition for removal was filed are controlling."  Crosby v. Paul Hardeman, Inc., 414 F.2d 1, 3 (8th Cir. 1969) (citing Pullman Co. v. Jenkins, 305 U.S. 534, 537-38 (1939)).

A case shall be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction . . . ."  28 U.S.C. § 1447(c).  The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction.  See In re Bus. Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993). When considering a motion to remand, a court must resolve all doubts about federal jurisdiction in favor of remand.  See id.

**B. Fraudulent Joinder**

Under § 1332(a), federal subject matter jurisdiction on the basis of diversity of citizenship exists when there is both an amount in controversy greater than $75,000 and "complete diversity of citizenship," meaning that none of the defendants is a citizen in a state where any plaintiff is a citizen. See Capitol Indem. Corp. v. Russellville Steel Co., Inc., 367 F.3d 831, 835 (8th Cir. 2004).

Under the doctrine of fraudulent joinder, "the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant" in an attempt to defeat complete diversity does not prevent removal. Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 806 (8th Cir. 2003); Anderson v. Home Ins. Co., 724 F.2d 82, 84 (8th Cir. 1983). In determining whether a non-diverse defendant has been fraudulently joined, "the district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability [against the non-diverse defendant] based upon the facts involved." Filla, 336 F.3d at 811. "Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indem. Corp., 280 F.3d 868, 871 (8th Cir. 2002).

**C. The Individual Defendants**

Although the individual defendants concede they reside in Minnesota, they argue they are fraudulently joined, as Farr has failed to demonstrate any basis in law or fact which supports a claim against them.

**1. Negligence per se**

For her first count, Farr alleges Defendants are liable for negligence per se.

Minnesota Statute § 219.31 states "every railroad company shall build and maintain good and substantial fences on each side of all lines of its railroad." Farr alleges "Defendants," as a group, failed to abide by the duty of care stated in § 219.31.

The individual defendants cannot be liable for negligence per se in this instance. A negligence per se claim shares the same elements as a common law negligence claim, except that the ordinary duty of care is supplanted by a statutory duty of care. Here, the "the traditional standard of the reasonable man of ordinary prudence" is replaced by the statutory duty to place fences along railroad lines. See Seim v. Garavalia, 306 N.W.2d 806, 810 (Minn. 1981) (citation omitted). Given the plain text of the statute, the duty articulated in § 219.31 does not extend to individual employees of a railroad company. The statute imposes the requirement on "every railroad company" and allows liability only against railroad companies. Minn. Stat. § 219.31. Neither this nor the related statutes define "railroad company" to include individual employees. Similarly, no Minnesota court has interpreted this statue to apply to individual employees. On the contrary, Minnesota courts have enforced the fencing requirement against companies alone. See, e.g., Sirovy v. Davis, 290 F. 60, 62 (8th Cir. 1923). Farr has failed to demonstrate any reasonable basis for how § 219.31 requires individual employees to build and maintain railroad fences, or how this statute imposes liability on individual defendants.

Even if the statute applied to employees, the Complaint refers to either the "Defendant Railroad" acting alone or to "Defendants" as an undifferentiated group. See, e.g., Compl. ¶ 24. Although the Court takes the Complaint as true for purposes of this motion, it is not required to accept unreasonable inferences. See, e.g., Brown v. Medtronic, Inc., 628 F.3d 451, 461 (8th Cir. 2010). Farr has failed to demonstrate how the individual plaintiffs played any role in the

building and maintaining of fences.

### 2. Premises Liability

For her second count, Farr alleges Defendants had a duty to maintain the safety of and/or warn against the danger of "Defendant railroad's right of way." For a claim of premises liability to stand against a person, the person must own, possess, or control the property at issue. See Ostrander v. Duggan, 341 F.3d 745, 748 (8th Cir. 2003). Attempting to avoid the inexorable conclusion, Farr vaguely argues that "[e]mployees of a corporation, if acting in the role of possessors of land, owe the duties of possessors of land." Pl.'s Reply [Docket No. 14] at 3. Nowhere in the Complaint or the briefing does Farr explain how four individual employees of a national railroad company legally or actually possessed a specific tract of railroad in Ramsey County. Farr has thus failed to demonstrate any reasonable basis for premises liability.

### 3. Failure to Cooperate with Community

In Count 3, Farr alleges Defendants have breached their duty to cooperate with the local community. Farr alleges this duty requires informing the public of "present and future dangers its railroad operation [sic] create." Compl. ¶ 37. As the sole basis for this duty to inform or cooperate, Farr cites a "Fatality and Trespass Prevention Workshop" conducted in 2012, at which the Federal Railroad Administration "documented the industry's commitment to community and that it was custom in this industry" for railroad companies to "approach all communities and inform them" of possible dangers. Id.

Farr does not identify, nor has the Court located, any judicial recognition of a "duty to cooperate" with the community. Farr's own allegations suggest the impetus to cooperate with and inform the community is a documented "custom," akin to a best practice, rather than a

legally-violable duty of care. Even if such a duty of care existed, Farr has failed to allege how any of the named individual defendants played any role in cooperating with or even communicating with the local community surrounding the railroad track at issue. As such, Farr has failed to demonstrate a reasonable basis for liability as to the individual defendants.

### 4. Common Law Negligence

Fourth, Farr alleges common law negligence against the individual defendants. To state a negligence claim, a plaintiff must allege four elements: "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury." State Farm Fire & Cas. v. Aquila Inc., 718 N.W.2d 879, 887 (Minn. 2006). In the Complaint, Farr alleges Defendants as a group failed to exercise reasonable care when they: reduced the "Railroad Police Force," improperly trained their employees, failed to mark the path on which M.R. was injured as a crossing, failed to operate their trains properly, failed to report unsafe conditions, and failed to give adequate audible warnings. Compl. ¶ 40. In response to Defendants' argument that such duties cannot attach to individual employees, Farr states without legal support that "[t]he duties alleged by plaintiff Farr apply to both the individual defendants and their corporate employer." Pl.'s Reply at 3.

Farr has failed to demonstrate any reasonable basis for liability against the individual defendants. Farr has not alleged how any of the individual defendants committed any of the acts or omissions Farr lists in the Complaint, nor does Farr cite any legal authority demonstrating how an individual employee could be found liable for company-wide policy decisions, such as improperly operating trains or poorly training employees.

**5. Intentional Disregard for Public Safety**

As her final claim, Farr alleges the "Defendant railroad has intentionally elected to disregard legal duties owed to the pedestrians/non-motorized traffic." Compl. ¶ 42. Farr specifically defined "Defendant railroad" as referring to BNSF. Id. ¶ 7. As such, this claim does not refer to any of the individual defendants, and does not pursue liability against them.

The individual defendants are fraudulently joined because no reasonable basis for liability against them exists. As such, their presence in the suit does not destroy diversity jurisdiction.

**D. BNSF**

Farr also argues the Court lacks diversity jurisdiction over BNSF because BNSF has its principal place of business in St. Paul, Minnesota. Compl. ¶ 18. For purposes of federal diversity jurisdiction, a corporation is considered a citizen of the state in which it was incorporated and also of the state in which it has its principal place of business. 28 U.S.C. 1332(c)(1). BNSF was incorporated under the laws of Delaware, meaning unless its principal place of business is in Minnesota, it is a non-resident. Compl. ¶ 7.

To demonstrate BNSF's Minnesota citizenship, Farr applies the "total activity" test for determining a company's principal place of business. Under this analysis, the court "looks at all corporate activities" in determining citizenship. This includes considering where the corporation's "nerve center" or "locus of operations" is located as well as the location of the corporation's "production and service activities." Capitol Indem., 367 F.3d at 835-36. Under this test, Farr argues, BNSF should be subject to jurisdiction in Minnesota because it operates trains and does business in the state, and its safety policies affect Ramsey County.

BNSF responds that the United States Supreme Court has abrogated the "total activity" test in favor of exclusively considering a corporation's "nerve center." See Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010). Under the headquarters or "nerve center" test, the court should determine the principal place of business based on where the "corporation's officers direct, control, and coordinate the corporation's activities." Id. In support of this argument, BNSF Assistant Secretary Jeffrey T. Williams submitted a sworn affidavit, in which he testifies that BNSF's headquarters is located in Fort Worth, Texas. Williams Aff. [Docket No. 13] ¶ 3.

The dispute over BNSF's citizenship turns on which principal place of business test applies. In her reply, Farr states that Hertz "favored" the "nerve center" test over the "total activity" test. In Hertz, the Supreme Court did not merely favor the "nerve center" test: it adopted the test clearly and without ambiguity. The Court held: "We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.'" Hertz, 559 U.S. at 92-93. In so holding, the Court explicitly rejected the "total activity" test adopted in Capitol Indemnity. Id. at 82-83, 93-94. The Eighth Circuit has since recognized Hertz and applied the "nerve center" test. See, e.g., Wierman v. Casey's Gen. Stores, 638 F.3d 984, 1003-04 (8th Cir. 2011); Harris v. Chase Bank, N.A., 12-669, 2012 WL 1005017, at *2 (D. Minn. Mar. 26, 2012).

Applying the Hertz analysis, BNSF's headquarters is located in Texas. In his affidavit, Williams testified that all of the members of BNSF's board of directors and the majority of its officers report to the railroad's Fort Worth offices, while none work in St. Paul, Minnesota. In addition, BNSF's "primary and largest dispatching center" for the operation of trains is located

in Fort Worth. Id. ¶¶ 6-7. Further, BNSF has employees and does business in 28 states. Several of these states host more BNSF employees and operations than Minnesota. Id. ¶¶ 8-10. Farr does not dispute any of these facts with allegations, arguments, or evidence. Instead, Farr simply "contends BNSF has failed at this point in meeting its burden" that BNSF's principal place of business is in Texas. Pl.'s Reply at 4. The Court disagrees. Absent any genuine question of fact, BNSF's sworn affidavit properly demonstrates the company's citizenship.[2] Cf. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 646-47 (8th Cir. 2003) (discussing the consideration of affidavits in context of motion to dismiss for lack of personal jurisdiction). The mere fact that BNSF operates railroads in this state is not sufficient for citizenship; if that were the case, BNSF would be a citizen of more than half the states in this nation. Because the individual defendants were fraudulently joined, and because BNSF is a Texas corporation, the Court retains federal diversity jurisdiction.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [Docket No. 9] is **DENIED.**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 21, 2014.

---

[2] However, if at any point before final judgment it appears the court lacks subject matter jurisdiction, it may, on a motion or acting sua sponte, remand the action to state court. See Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 623 (8th Cir. 1997).